**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERARD GRIESBAUM** | : | |
|     **Plaintiff** | : | |
| | : | |
| **v.** | : | **3:CV-04-1726** |
| | : | **(CHIEF JUDGE VANASKIE)** |
| **AVENTIS PHARMACEUTICALS** | : | |
|     **Defendant** | : | |

**MEMORANDUM**

Plaintiff Gerard Griesbaum, invoking diversity jurisdiction under 28 U.S.C. § 1332,[1] has brought this action against his former employer for wrongful discharge under Pennsylvania law. Specifically, Mr. Griesbaum claims that he was improperly terminated in retaliation for attaining workers' compensation benefits a year earlier. Following completion of discovery, Defendant Aventis Pharmaceuticals ("Aventis"), moved for summary judgment. Because Mr. Griesbaum has failed to offer sufficient evidence supporting either a reasonable inference of a causal connection between his workers' compensation claim and his termination or a reasonable inference that the reasons articulated for his discharge were a pretext for a retaliatory animus, Aventis's motion will be granted.

---

[1] Hyperlinks for statutory and case citations have been provided in this opinion for the convenience of the reader. The printout of this decision will show all statutory and case citations as underlined.

## I. BACKGROUND

Mr. Griesbaum worked as a pharmaceutical sales representative for Aventis in its Reading, Pennsylvania territory. (Def.'s Statement of Material Facts ("S.M.F.") (Dkt. Entry 26-5) ¶ 1.)[2] On August 14, 2001, Mr. Griesbaum suffered serious injuries in a car accident while working for Aventis. (Id. ¶ 5.) Following the accident, Mr. Griesbaum has been unable to perform the essential functions of his position. (Id. ¶ 7.)

A worker's compensation claim was filed on Mr. Griesbaum's behalf soon after the accident. (Id. ¶ 6.) Mr. Griesbaum also received short-term disability benefits for six (6) months. (Id. ¶ 8.) Thereafter, Mr. Griesbaum received long-term disability benefits until February 2005, when Aventis's long-term disability benefits insurer determined that Mr. Griesbaum was no longer eligible for benefits.[3] (Id.)

Aventis maintains a Medical Leave and Absence Policy that mandates that employees "will be terminated . . . after 365 continuous calendar days of medical leave." (Id. ¶ 4.) This policy was documented in a policy manual received by Mr. Griesbaum before his accident and was available on Aventis's Intranet. (Id. ¶ 2.)

---

[2] Citation to Defendant's Statement of Material Facts signifies that Plaintiff admitted the asserted fact without qualifications. Where Plaintiff's reply to a particular assertion of fact qualifies that assertion in a material way, citation is made to both Defendant's and Plaintiff's Statements of Material Facts.

[3] Mr. Griesbaum is currently appealing Aventis's long-term disability insurer's decision to deny him benefits.

In a letter dated January 16, 2002, Aventis notified Mr. Griesbaum that his employment would be terminated if Mr. Griesbaum had "not returned to work, or been released to return to work, by the end of 12 consecutive months of medical leave." (Def.'s S.M.F. Ex. 4 (Dkt. Entry 26-9).)  Mr. Griesbaum claims he did not receive the letter,[4] and challenges whether the letter was ever sent.  (Pl.'s Counter Statement of Material Facts ("C.S.M.F.") (Dkt. Entry 30).)

Mr Griesbaum acknowledges that in February 2002, his manager, Rose Rich, informed him that Aventis was going to fill his position because the company needed a representative in his territory.  (Def.'s S.M.F. (Dkt. Entry 26-5) ¶ 11.)  Mr. Griesbaum does not challenge that Aventis filled his position because it needed to have a sales representative in the territory.  (Id.)

Sometime after August 14, 2002, Barbara Chalmers, an Aventis Human Resources Services Coordinator, conducted a regular audit of the employees on medical leave.[5] (Chalmers's Aff., Def.'s S.M.F. Ex. 7 (Dkt. Entry 26-12) ¶¶ 1-4.)  In accordance with Aventis's Medical Leave and Absence Policy, Ms. Chalmers marked all employees as terminated who had been on medical leave for longer than 365 days, including Mr. Griesbaum.  (Id.)  Ms. Chalmers' affidavit states that she was not familiar with Mr. Griesbaum or his worker's

---

[4] Mr. Griesbaum suggests that the letter failed to reach him because the letter misidentifies the zip code for his mailing address.  (Pl.'s C.S.M.F. (Dkt. Entry 30) ¶ 10); Mr. Griesbaum's Dep., Def.'s S.M.F. Ex. 1 (Dkt. Entry 26-6) at 57 (stating that the letter specifies his zip code as 17909-3317, while his correct zip code was 17901).)

[5] Mr. Griesbaum complains that he cannot verify Ms. Chalmers statement as he was not apprised of the audit.  (Pl.'s C.S.M.F. (Dkt. Entry 30) ¶ 12.)

3

compensation status when she marked him terminated. (Id.) It does not appear that Mr. Griesbaum was subsequently notified of his termination. (See Pl.'s C.S.M.F. (Dkt. Entry 30) ¶ 12.) Indeed, he only became aware of his termination in October 2002, when his 401(k) plan administrator and life insurance provider notified him of his post-termination options. (Mr. Griesbaum's Dep., Pl.'s C.S.M.F. Ex. A (Dkt. Entry 31-1) at 51, 56.)

On August 5, 2004, Mr. Griesbaum brought this action against Aventis. (Dkt. Entry 1.) He amended the complaint on November 3, 2004. (Dkt. Entry 13.) Mr. Griesbaum claims Aventis wrongfully discharged him in violation of public policy because it terminated his employment in retaliation for him pursuing worker's compensation benefits. (Id. ¶¶ 24-34.) Aventis has moved for summary judgment on Mr. Griesbaum's claim. (Dkt. Entry 26.) The motion has been fully briefed and is ripe for resolution.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Facts that could alter the outcome are material facts." Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994). "[S]ummary judgment will

not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its burden, the nonmoving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. The Wrongful Discharge Claim

Mr. Griesbaum claims that Aventis violated Pennsylvania law by terminating his employment in retaliation for him pursuing worker's compensation. The Pennsylvania Supreme Court has recognized a cause of action where an at-will employee, such as Mr. Griesbaum, alleges he was fired for pursuing a workers' compensation claim. See Shick v. Shirey, 716

A.2d 1231, 1238 (Pa. 1998) (holding that because there is a compelling public policy in favor of protecting an employee who has filed a workers' compensation claim, such an employee should be protected from retaliatory termination). The state's high court, however, did not articulate the elements of the cause of action in Shick.

In a case decided last year, the Pennsylvania Supreme Court utilized a four-prong test adopted by Washington courts for determining whether public policy prohibits an employer from discharging an at-will employee. Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511, 516-517 (Pa. 2005) (expanding the Shick holding to forbid an employer from terminating a supervisory employee who refuses to dissuade a subordinate employee from seeking workers' compensation benefits). The Rothrock Court, though, specifically refused to adopt the Washington test as Pennsylvania law,[6] but only used it "as a convenient analytical framework for disposition of [the matter before it]." Id. at 516. Significantly, the Rothrock Court observed

---

[6] The Washington test inquires as to whether:

> (1) there is a clear public policy implicated by the employer's discharge; (2) if so, whether that public policy will be jeopardized absent protection of the activity leading to the discharge; (3) whether employers in general have an "overriding justification" for wanting to utilize such activity as a factor affecting a decision to discharge an employee; and (4) whether the peculiar employee's activity in the case under scrutiny was indeed a substantial factor in the employer's decision to discharge.

Id. at 516 n.10 (citing Lins v. Children's Discovery Centers of America, Inc., 976 P.2d 168, 172 (Wash. Ct. App. 1999)).

that "the Washington legislature and its courts have been far less reluctant than Pennsylvania to create exceptions to the precept that an employer may fire an at-will employee for any reason." Id. at 515-16.

Absent clear direction from Pennsylvania courts to the contrary, this Court will continue the practice of Federal District Courts in Pennsylvania to apply the burden-shifting framework used in Title VII retaliation claims to determine whether Mr. Griesbaum was discharged in retaliation for pursuing workers' compensation benefits.[7] See Christman v. Cigas Machine Shop, Inc., 293 F. Supp. 2d 538, 543 (E.D. Pa. 2003); Landmesser v. United Air Lines, Inc., 102 F. Supp. 2d 273, 277-78 (E.D. Pa. 2000). Notably, both parties to this case frame their arguments within the context of this analytical scheme, and our Court of Appeals, albeit in non-precedential opinions, has affirmed use of the burden-shifting analytical framework in common law wrongful discharge cases similar to this matter. See Dunsmuir v. May Dept. Stores Co., 120 Fed. Appx. 927, 929 (3d Cir. 2005); Deily v. Waste Mgmt. of Allentown, 55 Fed. Appx. 605, 608 (3d Cir. 2003);

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected employee activity; (2) he suffered an adverse employment action; and (3) a

---

[7] It should be noted that Mr. Griesbaum would also fail to establish that he was terminated for pursuing workers' compensation benefits under the Washington standard. Specifically, as discussed below, Mr. Griesbaum fails to present sufficient evidence that his pursual of benefits was a "substantial factor (i.e., a cause of)" Aventis's decision to discharge him. See Lins, 976 P.2d at 172.

7

causal connection exists between his participation in the protected activity and the adverse employment action. Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995). If a plaintiff successfully establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[8] Krouse v. American Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997). If the defendant satisfies this requirement, the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the articulated reason is pretext for a retaliatory motive. Id. at 501.

Aventis initially challenges whether Mr. Griesbaum has presented sufficient evidence that a causal connection exists between his pursuit of workers' compensation benefits and his termination in order to establish the third element of a prima facie case of retaliation.[9] (Def.'s Br. Supp. Summ. J. (Dkt. Entry 26-1) at 4-6.) The record shows that Aventis fired Mr. Griesbaum approximately one year after his receipt of workers' compensation. This case therefore does not present a situation where the "unusually suggestive" timing between the alleged retaliatory act and the protected activity is sufficient to establish a causal link. See

---

[8] The burden of persuasion always remains with the plaintiff within the McDonnell Douglas burden-shifting framework. Sarullo v. U.S. Postal Service, 352 F.3d 789, 799 n.10 (3d Cir. 2003); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

[9] Aventis admits that Mr. Griesbaum has established the first two elements of a prima facie case of retaliation: (1) he engaged in a protected activity by pursuing workers' compensation benefits, and (2) he suffered an adverse employment action when Aventis terminated his employment.

Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (finding a period of over two months separating an alleged retaliatory action and the employee's protected activity was not sufficient alone to establish a causal connection); Washco v. Federal Express Corp., 402 F. Supp. 2d 547, 559 (E.D. Pa. 2005) (finding the five month time difference in the case as not "unnecessarily suggestive" of a causal connection).

Plaintiff, however, asserts that "there is a question of fact as to when and who made the decision to terminate Mr. Griesbaum." (Pl.'s Br. Opp. Summ. J. (Dkt. Entry 29-1) at 12.) While making this argument, Mr. Griesbaum also notes that managers he worked with assured him after his accident that his job was secure. He therefore appears to be implying that Aventis's account of when and who made the decision to terminate his employment is false, and that the decision was actually made in connection with his seeking workers' compensation benefits.

Mr. Griesbaum supports his theory by pointing out that Aventis did not properly notify him of his termination. (Id. at 13.) Specifically, Mr. Griesbaum claims he did not receive a letter dated January 16, 2002, notifying him that he would be terminated if he did not return to work after 12 consecutive months of medical leave; nor did he receive direct notice of his termination from Aventis. In Mr. Griesbaum's assessment, these facts "suggest[ ] that Aventis is disguising the real reason [he] was terminated – for filing the workers' compensation claim." (Id.)

The record, however, does not support Mr. Griesbaum's theory. First, there is no question of fact as to "when and who made the decision to fire him." There is no evidence that

he was terminated before August 14, 2002.[10]  Thus, Mr. Griesbaum must be implying that the decision to terminate his employment was made before August 14, 2002, but was not acted upon until after August 14, 2002.  Mr. Griesbaum's speculation, however, does little to undermine Aventis's properly supported motion for summary judgment.

Nor is there any evidence that someone other than Barbara Chalmers, an Aventis Human Resources Services Coordinator who had no knowledge of his workers' compensation claim, made the decision to terminate Mr. Griesbaum's employment.  (Chalmers's Aff., Def.'s S.M.F. Ex. 7 (Dkt. Entry 26-12) ¶¶ 1-4.)  As stated in her affidavit, Ms. Chalmers marked Mr. Griesbaum as terminated because he had not returned to work after 12 consecutive months of medical leave in accordance with established company policy.  (Id.)

Mr. Griesbaum insinuates that Maureen Flinton, a manager in Aventis's disability department who was aware of his workers' compensation claim, may have had a role in his termination.  (Pl.'s Br. Opp. Summ. J. (Dkt. Entry 29-1) at 11.)  Ms. Flinton, however, testified that she was no longer involved with Mr. Griesbaum's situation after he was converted from short-term disability to long-term disability in February 2002.[11]  (Ms. Flinton's Dep., Pl. C.S.M.F.

---

[10] Mr. Griesbaum learned he was terminated in October 2002, when his 401(k) plan administrator and life insurance provider notified him of his post-termination options.  (Mr. Griesbaum's Dep., Pl. C.S.M.F. Ex. A (Dkt. Entry 31-1) at 51, 56.)  Presumably, he would have received these notifications earlier if he was terminated before August 14, 2002.

[11] It should also be noted that it is unclear, at best, whether Ms. Flinton had authority to terminate Mr. Griesbaum's employment.  Mr. Griesbaum, though, may be implying that she informed a decision-maker of Mr. Griesbaum's workers' compensation status.  Again, there is no evidence in support of these allegations other than Mr. Griesbaum's speculation.

Ex. D (Dkt. Entry 33) at 18.)  Significantly, following completion of discovery, Mr. Griesbaum fails to identify any person who may have made the decision to terminate his employment other than Ms. Chalmers.

Nor does Mr. Griesbaum present any affirmative evidence to suggest that Aventis terminated his employment in retaliation for him seeking workers' compensation benefits.[12]  There is no evidence, for instance, that Aventis was hostile to Mr. Griesbaum's workers' compensation claim, such as discouraging him from filing a workers' compensation claim.  Indeed, it appears that Aventis filed Mr. Griesbaum's workers' compensation claim for him.  (Mr. Griesbaum's Dep., Pl.'s Br. Opp. Summ. J. Ex. A (Dkt. Entry 31-1) at 31-33.)

In Dunsmuir v. May Dept. Stores Co., 120 Fed. Appx. 927, 929-30 (3d Cir. 2005), our Court of Appeals affirmed the granting of summary judgment where the decision-maker who terminated the plaintiff's employment had no knowledge of the plaintiff's receipt of workers' compensation benefits.  Unlike the case before this Court, though, there was evidence presented in Dunsmuir that a supervisor attempted to dissuade the plaintiff from pursuing a workers' compensation claim.  Id. at 930.  This case presents a far clearer situation for summary judgment, as the decision-maker who terminated Mr. Griesbaum's employment was

---

[12]  Mr. Griesbaum does allege that Aventis's failure to notify him of his termination suggests a causal connection.  It is troubling that Aventis cannot present stronger evidence that it did in fact notify Mr. Griesbaum of his termination.  The lack of notification, though, does not present sufficient evidence that Mr. Griesbaum's termination was connected to his pursuit of worker's compensation benefits.

unaware of his workers' compensation claim and there is no evidence of a pattern of retaliating against Aventis employees who presented workers' compensation claims.

Speculative allegations are insufficient to establish a causal connection between an employee's claim for worker'' compensation benefits and his termination. See Schoch, 912 F.2d at 657; Landmesser, 102 F. Supp. 2d at 278 (finding a reasonable jury could not find a causal connection in a similar retaliation case based on plaintiff's speculation alone). A contrary holding would allow any plaintiff receiving workers' compensation benefits to establish a causal connection based solely on the fact that they are receiving benefits. Aventis's motion for summary judgment, therefore, will be granted.

Even if there was a genuine dispute whether Plaintiff has established a prima facie case of retaliation, he has failed to produce evidence from which a fact-finder could reasonably disbelieve Aventis's proffered reasons for its actions, or believe that a retaliatory motive was more likely than not a motivating cause of Aventis's actions. Aventis asserts that it terminated Mr. Griesbaum's employment in accordance with its established policy to terminate any employee who had not returned to work after 12 consecutive months of medical leave. Plaintiff acknowledges the existence of this policy and that it was included in written employment materials that he had received. (Mr. Griesbaum's Dep., Pl. C.S.M.F. Ex. A (Dkt. Entry 31) at 64.) He has not presented any evidence to suggest that the policy was not uniformly applied, or that employees who eschewed worker's compensation claims were retained after a twelve-

month absence from work.

Ms. Chalmers stated in an affidavit that she terminated Mr. Griesbaum's employment after conducting a regular audit of the employees on medical leave. (Chalmers's Aff., Def.'s S.M.F. Ex. 7 (Dkt. Entry 26-12) ¶¶ 1-4.) In accordance with Aventis's Medical Leave and Absence Policy, Ms. Chalmers marked all employees as terminated who had been on medical leave for longer than 365 days, including Mr. Griesbaum. (Id.)

In order to defeat a properly supported motion for summary judgment, a plaintiff "must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). To discredit the employer's proffered reason, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." Id. at 765 (internal quotations omitted).

Mr. Griesbaum fails to meet this burden. The only argument he presents to cast doubt on Aventis's preferred reason is that he did not receive notice of his impending termination. (Pl.'s Br. Opp. Summ. J. (Dkt. Entry 29-1) at 13-15.) Specifically, Mr. Griesbaum claims he did

13

not receive the letter dated January 16, 2002, informing him that his employment would be terminated if he did not return to work after 12 consecutive months of medical leave.  This fact is immaterial.  What is significant is that Aventis had a policy of terminating employees who did not return to work after 12 consecutive months of medical leave.  As discussed above, there is no evidence that Aventis deviated from its policy when it terminated Mr. Griesbaum.  Ms. Chalmers swore that she was not familiar with Mr. Griesbaum or his worker's compensation status at the time.  (Chalmers's Aff., Def.'s S.M.F. Ex. 7 (Dkt. Entry 26-12) ¶¶ 1-4.)  There is also no evidence that Mr. Griesbaum was terminated before the time Ms. Chalmers claims she marked his employment terminated.

There is simply no evidence from which a rational fact-finder could conclude that Aventis's proffered reason for terminating Mr. Griesbaum  "was either a post hoc fabrication or otherwise did not actually motivate the employment action."  Fuentes, 32 F.3d at 764-65.  Summary judgment in favor of Aventis, therefore, is appropriate on this argument as well.

## III. CONCLUSION

Mr. Griesbaum has failed to present sufficient evidence of a causal relationship between his receipt of workers' compensation benefits and his ultimate termination approximately a year later.  Even assuming Mr. Griesbaum satisfied his prima facie case, he has failed to present sufficient evidence showing that the reasons articulated for his discharge were a pretext for retaliation.  As a result, judgment will be entered in Aventis's favor.  An

appropriate order follows.

           **s/ Thomas I. Vanaskie**
           Thomas I. Vanaskie
           United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERARD GRIESBAUM** | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **3:CV-04-1726** |
| | : | **(JUDGE VANASKIE)** |
| **AVENTIS PHARMACEUTICALS** | : | |
| Defendant | : | |

## ORDER

**NOW, THIS 25th DAY OF SEPTEMBER, 2006**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. Defendant's motion for summary judgment (Dkt. Entry 26) is **GRANTED**.

2. The Clerk of Court is directed to enter judgment in favor of Defendant and to mark this case **CLOSED**.

                                        **s/ Thomas I. Vanaskie**
                                        Thomas I. Vanaskie
                                        United States District Judge